PACE vs. RUST.

Decree of Foreclosure: *When not necessary to revive, to make sale under, etc.*

Where an execution and decree of foreclosure are put in the hands of proper officers to be executed *during the lifetime* of the plaintiff, and the plaintiff dies before the execution is completed, it is not necessary to revive the action and bring in the heirs or legal representatives of the deceased plaintiff as parties.

APPEAL from *Pulaski* Chancery Court.

Hon. T. D. W. Yonley, Chancellor.

*A. H. Garland*, for appellant.

*Gallagher & Newton*, for appellee.

Bennett, J. On bill filed and proceedings had in the Puluski chancery court, to enforce a lien on certain lands lying in that county, for the payment of a certain sum of money, the court ordered the lands to be sold by D. P. Upham, a special commissioner. The sale to be for cash to the amount named in the decree, and should the lands bring more than that sum, the surplus to be on a credit of one year. The commissioner was required to bring the cash payment and the obligations of the purchaser for the credit payments into court, and the deed of the commissioner was not to be delivered to the purchaser until approved by the court.

On the coming in of the commissioner's report, the defend-

ants, to the bill, Nannie Rust and heirs of Albert Rust, deceased, upon which the decree was rendered, filed several exceptions to the confirmation of the report.  The court decided that the first exception was well taken, and ordered the sale to be set aside.  James F. Pace, the purchaser at the sale, objected to the order of the court setting the sale aside, which was overruled and he appealed.

The exceptions filed were as follows :

*First.*  That when the sale of said lands took place, and the same were sold by said commissioner, the said John A. Winston, the original complainant in the bill, was dead, having died sometime in the month of November or December previous, and said decree had never been revived in the name of any legal representative of said Winston, and the sale under said decree was void. .

*Second.*  That said D. P. Upham, on the day of sale, stated that he should require payment in cash to the amount of the debt, interest, costs, etc., and that he was authorized to declare a bid for said lands of $10,000.  Whereupon, one Pace bid fifty dollars more, and said Nannie B. Rust, by her counsel, forbid said sale, for she avers that more than 800 acres of said lands are cleared and first class Arkansas bottom lands, and the amount bid, did not amount to one-half of their value.

*Third.*  That, under the pleadings in this cause, the plaintiffs, in the original complaint, had no right to a decree for a sale of the lands.

*Fourth.*  That she believed, upon a resale of these lands, they would bring double the amount of this sale.

*Fifth.*  That, if the sale was had, it would effect the complete destruction of her rights as the widow of Albert Rust, and that by ordering a resale, her rights would be protected, whilst the rights of the creditors and distributees in the estate, could not be jeopardized.

The judgment of the court, setting aside the commissioner's sale, is as follows:  "The court being sufficiently advised what decision to render upon the first exception of said Nannie B. Rust to the report of the sale of the lands in controversy herein by D. P. Upham, commissioner of this court appointed for that purpose, and which after argument of counsel was submitted to the court and taken under advisement, doth find that the sale of said lands having been made after the death of said John A. Winston, the plaintiff, in the original complaint, and without any revivor in favor of his heirs-at-law, or other legal representatives, is null and void and should be set aside.  It is therefore ordered and adjudged that the pretended sale of the lands in controversy  *  *  *  *  made by said D. P. Upham  *  *  *  be and the same is hereby annulled and set aside, and his report thereof unconfirmed and rejected."

Exceptions to a commissioner's report partake of the nature of special demurrers.  The record before us does not show what disposition was made of the exceptions filed, except the first, and, in the absence of any proof, we are left to the presumption that all but the first were overruled by the chancellor.

The action of the court below upon that exception raises but a single proposition of law, viz: Does the *death* of a plaintiff, in a suit to foreclose a mortgage, after a regular judgment of foreclosure is entered, affect the power of the commissioner, appointed to carry into effect the decree, in going on and making a sale of the lands mentioned in pursuance of the decree or judgment and executing a deed to the purchaser; or is it necessary in such cases to revive the action and bring in the representatives of the deceased plaintiff as parties?

In the case before us, the decree was put in the hands of the commissioner to be executed, in the life time of the plaint-

iff, and while it was in process of being executed, he died. Had the judgment been rendered at common law, with a *fieri facias* in the sheriff's hands at the time of the death of the plaintiff, it would have been perfectly lawful for him to proceed to execute the writ against the personal or real property of the defendant, notwithstanding the death. No *scire facias* or other revivor would have been necessary.

A decree in chancery, in most respects, resembles a *fi. fa.* upon a common law judgment. The object is to collect the money found due to the plaintiff by the judgment. The *fi. fa.* directs it to be made out of the defendant's property generally, and the decree in foreclosure, out of the specific property mortgaged.

Where an execution and decree of foreclosure are put into the hands of proper officers to be executed, during the lifetime of the plaintiff, and he dies before the execution is completed, no reason can be assigned why there should be a revivor in one case more than in the other. In both cases the money, when collected, may be paid to the personal representatives if there be any, and if not, then it may be paid into court. In both, the judgments are final, and the final process in execution of both is in the hands of the proper officer in the lifetime of the plaintiff. *Erwin's Lessee v. Dundas et al.,* 4 How., 59 ; *Arnett v. Arnett et al.,* 14 Ark., 57; *Whiting et al. v. Bank of the U. S.,* 13 Pet., 7 ; *Lynde v. O'Donnell,* 21 How. Pr., 34–38.

The chancellor was in error in setting the sale aside, because there was no revivor of the suit after the death of Winston, the complainant. The final decree was rendered in his lifetime, and his right fully determined. Nothing was left but to execute the decree and collect the money due upon it, which, by its own terms, was to be paid into court, and could be turned over to such persons as could establish a claim to it.

From the record presented to us, we find that a new sale has been ordered. The first one having been declared valid, another sale is unnecessary. Therefore, the cause is remanded, with instructions to set aside the record order of sale, to overrule the exceptions to the commissioner's report and confirm it, and cause him to make a deed to the purchaser at the sale, upon his compliance with the terms of the decree, and that said deed be approved according to law.